UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:13-cv-11306-RGS

ELLEN GLOWACKI

v.

LAW OFFICES OF
HOWARD LEE SCHIFF, P.C.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

June 5, 2014

STEARNS, D.J.

Plaintiff Ellen Glowacki alleges that the Law Office of Howard Lee Schiff, P.C. (Schiff) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, by engaging in "oppressive," "deceptive," and "unfair" collection practices. Before the court are the parties' cross-motions for summary judgment.

BACKGROUND

Glowacki is a resident of Nantucket, Massachusetts. Schiff is a law firm incorporated in the State of Connecticut with its principal place of business in East Hartford, Connecticut. Schiff maintains regional offices in Massachusetts, Rhode Island, Maine, and Vermont.

On October 1, 1984, Glowacki opened a credit card account with Citibank, N.A. (Citibank). Citibank retained Schiff to recover what it believed to be a balance of $15,179.84 owing on the account. On April 6, 2013, Schiff sent Glowacki a demand letter. On April 25, 2012, Glowacki disputed the debt in a letter to Schiff. Glowacki asked for an explanation of the debt, its calculation, a breakdown of the interest charged, the fees and costs, and the alleged debtor's name, address, and telephone number.[1] On November 9, 2012, Schiff responded with copies of monthly billing

---

[1] Glowacki's letter requested:

> 1. An explanation of what the money you say is owed is for; 2. Explain and show how you calculated what is alleged to be owed including a complete and detailed breakdown of any and all interest, fees and costs so that the account is accurate to the penny; 3. Identify the original creditor by name, address and phone number; 4. Identify the name of any securitized transaction that the account has been sold into; 5. Identify the servicer by name, address and phone number of any securitized transaction that the account has been sold into; 6. Provide all executed documents evidencing the securitization of the account receivables or the default fees and costs; 7. Provide evidence that any applicable statute of limitations has not expired on this account; 8. If applicable, provide evidence that you are licensed to collect debts in Massachusetts; and 9. Provide the name and address of your Registered Agent.

Def.'s Ex. G.

statements listing Glowacki's name and address.  Schiff's letter stated in part:

> We suggest that you send us a check or money order for the balance due payable to "Citibank, N.A." unless you intend to exercise your rights as stated in the Validation Notice below. All questions and payments should be directed to this office. . . .

> VALIDATION NOTICE

> If you do not dispute the validity of the debt, or any portion thereof, within 30 days of the receipt of this letter, we will assume it is valid.  If you dispute the validity of this debt or any portion thereof, in writing within 30 days of receipt of this letter, we will obtain and mail you verification of the debt or a copy of a judgment against you.  At your request, in writing within 30 days of receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor. . . .

> Respectfully,

> Law offices Howard Lee Schiff, P.C.

Def.'s Ex. F.

After receiving no response from Glowacki, on November 23, 2012, Schiff brought suit on behalf of Citibank against Glowacki in the Nantucket District Court.  On April 29, 2013, while the Citibank case was pending, Glowacki brought a separate suit in the state court against Schiff, alleging

violations of the FDCPA and the Massachusetts Consumer Protection Act. [2]
On May 30, 2013, Schiff removed the lawsuit to this court. After the
expiration of fact discovery, on March 14, 2014, Schiff moved for summary
judgment. On April 1, 2014, Glowacki filed an opposition and a cross-
motion for summary judgment. The parties' briefing is now complete.

DISCUSSION

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If this is
accomplished, the burden then "shifts to the nonmoving party to establish
the existence of an issue of fact that could affect the outcome of the
litigation and from which a reasonable jury could find for the [nonmoving
party]." *Rogers v. Fair*, 902 F. 2d 140, 143 (1st Cir. 1990). The nonmoving
party "must adduce specific, provable facts demonstrating that there is a
triable issue." *Id.*, quoting *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st

---

[2] Glowacki avers that Schiff's April 6th collection letter references a
"Citi AAdvantage World Mastercard" account, yet it provided credit card
statements as part of its verification for "Citi Driver's Edge Card" and "Citi
Driver's Edge Charter World. Compl. ¶ 25. Def.'s Ex.'s H1-H2. However,
the last four digits of the account number for the "Citi Driver's Edge Charter
World MasterCard" are the same as those of the "Citi AAdvantage World
Mastercard." Glowacki does not deny having owned a "Citi Driver's Edge
Card" or a "Citi Driver's Edge Charter World MasterCard."

4

Cir. 1989).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original).

**The FDCPA**

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The term "debt collector" applies to any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The effect of these broad statutory prohibitions is to regulate all forms of "communications" with borrowers.  *In re Hart*, 246 B.R. 709, 729 (Bankr. D. Mass. 2000); *see also* 15 U.S.C. § 1692a(2).

The following practices, among others, violate the FDCPA.

(2)  The false representation of –

(A)  the character, amount or legal status of any debt; or

> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . .

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt.

15 U.S.C. § 1692e.

Section 1692f(1) of the FDCPA also makes it unlawful to "use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *In re Hart*, 246 B.R. at 729. Whether the debt is legitimately owed also has no bearing on the validity of the action. *Id.* at 777.

"When considering whether a particular collection notice violates the FDCPA, courts usually look to whether the objective 'least sophisticated debtor' would find the notice improperly threatening or misleading."

*Martin v. Sands*, 62 F. Supp. 2d 196, 199 (D. Mass. 1999), citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (the "'least sophisticated debtor 'standard has . . . been adopted by all federal appellate courts that have considered the issue.'"). The "least sophisticated consumer" test is an objective standard that "pays no attention to the circumstances of the particular debtor in question . . . ." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012).

Glowacki contends that Schiff's April 6, 2012 collection letter violated the FDCPA "because it contained intentional (and negligent[]) misrepresentations and was deceptive, unclear, and confusing." Pl.'s Opp'n at 10. Glowacki also alleges the letter, among other things, failed to identify the legal basis under which Schiff was entitled to bring a debt collection action in the Massachusetts courts.

Schiff first argues that Glowacki's Complaint fails as a matter of law because she does not allege that "the debt at issue [arose] out of an alleged transaction which was primarily for personal, family, or household purposes and falls within the definition of debt for purposes of 15 U.S.C. § 1692a(5) as required by the statute." Def.'s Br. at 4. The credit card statements at issue are, however, part of the summary judgment record, *see*

Def.'s Ex.'s H1-H3, and they show numerous charges for what could only fairly be regarded as personal and household expenses, including consumer merchandise, meals, and furniture.  *See* Def.'s Ex.'s H1-H3.

Turning to the more substantive issue, Glowacki claims that Schiff's April 6, 2012 demand letter violated section 1692e because it failed to identify the source of Schiff's ability to file a collection action in Massachusetts,[3] and (curiously) that the letter, by only "suggesting" instead of "demanding" payment, misled Glowacki into disputing the debt.  Compl. ¶ 40(a).[4]

Glowacki has presented no evidence of behavior by Schiff that, even by an objective standard, could be characterized as oppressive, deceptive, or abusive.  The Schiff letterhead itself belies Glowacki's description. It clearly lists the locations of Schiff's six regional offices, including the one in

---

[3] Additionally, Glowacki argues that the mailing address of East Hartford, Connecticut on Schiff's letterhead misled her as to whether or not Schiff was authorized to practice law in Massachusetts, and that Schiff failed to disclose any affiliated law firm in Massachusetts.  Glowacki notes that Schiff's collection letter did not list the name, address, or phone number of Schiff's Massachusetts office, or the name, address, or phone number of any Massachusetts-licensed attorney.  Compl. ¶ 31-35.

[4] The balance of the Complaint simply recites practices identified in the FDCPA as harassing, oppressive, or abusive without any particular reference to Schiff's demand letter.

Auburn, Massachusetts.[5]  There is simply nothing about the letterhead that could possibly lead even the most unsophisticated of consumers into the belief that Schiff as a law firm had no ability to file a lawsuit in Massachusetts.[6]

Nor is possible that the least sophisticated of consumers would have reasonably interpreted the "suggestion" that the debt be paid as an admission that the debt was not valid and as an invitation to the putative debtor to resist collection. In the first instance, section 1692d "does not preclude debt collectors from making non-abusive statements designed to encourage voluntary payment," as Schiff politely did here.  It prohibits "only oppressive and outrageous conduct."  *Bieber v. Associated Collection Servs., Inc.,* 631 F. Supp. 1410, 1417 (D. Kan. 1986).  In the second instance, the least sophisticated consumer test does not extend protection to "'every bizarre or idiosyncratic interpretation of a collection notice' and courts

---

[5]  Glowacki also alleges that the failure of a specifically named attorney to personally sign the April 6th letter constituted an unfair and deceptive practice.  Compl. ¶ 11.  The letter did list the law firm's name, which includes the name of its principal, the "Law Offices of Howard Lee Schiff, P.C.," as well as the firm's address, telephone, and facsimile numbers.  Nothing in the case law or the FDCPA itself requires that the name of a specific attorney appear on a collection letter sent by a law firm to a debtor.

[6]  While not immediately relevant, Schiff offers evidence that ten of its attorney-employees are licensed to practice law in Massachusetts.  Def.'s Ex. B.

should apply the standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *Easterling*, 692 F.3d at 234, quoting *Russell*, 74 F.3d at 33.  The court sees no deceitful or oppressive conduct on Schiff's part.

Next, Glowacki contends that Schiff failed to timely respond to Glowacki's April 25, 2012 debt validation request.  Particularly, Glowacki asserts that Schiff should have provided responses to each and every one of Glowacki's inquiries, *see* fn.1, *supra*, or provide explanations as to why it was unable to do so.  Under the FDCPA, a consumer must file a dispute *in writing,* within thirty days of receipt of a demand letter to trigger a debt validation process. *See* 15 U.S.C. § 1692g(b).  "Once a consumer exercises this right, a debt collector must cease all further debt collection activity until it complies with various verification obligations."  *Brady v. Credit Recovery Co., Inc.*, 160 F. 3d 64, 67 (1st Cir. 1998), citing 15 U.S.C. § 1692g(b).  The FDCPA does not define what constitutes proper debt verification, nor has the First Circuit specifically addressed the specific quantum of verification under the FDCPA.[7]  *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 159 (D. Me. 2011).

_____

[7] Section 1692g(b) provides:

Nevertheless, other circuit courts have uniformly held that this provision of the FDCPA is not intended to give a debtor a detailed accounting of the debt to be collected. Instead, "[c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999), (citation and internal punctuation omitted); s*ee also Dunham v. Portfolio Recovery Assocs., LLC,* 663 F.3d 997, 1003 (8th Cir. 2011). In *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162 (9th Cir. 2006), the Ninth Circuit adopted the standard as articulated by the Fourth Circuit, holding that "[a]t the minimum, 'verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'"

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. 15 U.S.C. § 1692g(b).

*Id.* at 1173-1174, quoting *Chaudhry,* 174 F.3d at 406. Therefore, to sufficiently validate a debt, the debt collector need only demonstrate that the creditor has provided some evidence that the debtor owes the specific amount demanded. Here, the credit card statements provided by Schiff indicating the delinquent balance serve that purpose.[8]

Simply put, in relation to the FDCPA, there is no evidence that Schiff acted unreasonably in its collection activities. Schiff is entitled to summary judgment on Count I (the FDCPA claim).

## ORDER

For the foregoing reasons, Schiff's motion for summary judgment on the FDCPA claim is <u>ALLOWED</u> with prejudice. The remaining claims are <u>REMANDED</u> to the state court for resolution.[9] The Clerk will enter judgment for Schiff on the FDCPA claim and remand the case file to the state court.

## SO ORDERED.

_____

[8] Glowacki concedes in her brief that the FDCPA does not establish a time frame in which a debt collector must respond to a validation request. The statute only requires that a debtor collector cease all collection activity until the request is satisfied. There is no evidence that Schiff did not satisfy this requirement.

[9] When a court dismisses the foundational federal claims, the balance of competing factors ordinarily will favor declining jurisdiction over the pendent state law claims. *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE